Robert J. MAYLIE, Jr.

v.

NATIONAL RAILROAD PASSENGER CORPORATION.

Civ. No. 81–1964.

United States District Court, E.D. Pennsylvania.

April 15, 1992.

Joseph Smukler, Meyer, Lasch, Hankin & Poul, Philadelphia, Pa., for plaintiff.

Richard L. Goerwitz, Jr., Kevin Canavan, Swartz, Campbell & Detweiler, Philadelphia, Pa., for defendant.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

This is an action under the Federal Employers' Liability Act, 45 U.S.C. §§ 51 *et seq.*, for personal injuries that plaintiff Robert J. Maylie, Jr., suffered while in the employ of defendant National Railroad Passenger Corporation (AMTRAK). After the jury returned a verdict in favor of plaintiff for $2,567,259.60, defendant moved for a new trial under Rule 59(a) of the Federal Rules of Civil Procedure. For the reasons explained below, I will deny that motion, provided that plaintiff agrees to remittitur of $1,466,000.

## I. Facts and Procedural History

This case has a long and complicated history, both before this court and before the Third Circuit. Briefly, the facts are as follows: In February 1981, Maylie was asked by his supervisor for assistance in emptying a large metal drum into a dumpster. While the two men were lifting the drum, the contents of the drum, which included an amount of liquid, shifted, and plaintiff lost his footing and fell, injuring his back. Plaintiff has not worked since the accident, and has undergone surgery on two occasions as a result of the injury. Plaintiff was also hospitalized on one occasion for non-surgical treatment of his back, and, in addition, briefly required hospitalization because of depression associated with his injury. Plaintiff claimed that, due to the negligence of defendant, the area in which he was working was slick with grease, oil, and diesel fuel. Defendant disputed plaintiff's claim. In 1982, a jury returned a verdict in favor of defendant.

Plaintiff moved for a new trial, alleging, *inter alia,* that defendant, through its agent, shop superintendent Steven Scott, had used coercive tactics to discourage plaintiff's co-workers from testifying on his behalf. In February 1983, after hearing testimony and oral argument and reviewing affidavits, I determined that Dan Sinisi, one of plaintiff's co-workers, had not testified because he feared retaliation. I therefore granted plaintiff's motion. Defendant then moved for reconsideration. After a further hearing, I determined that Mr. Sinisi's decision not to testify was a matter of free choice—*i.e.,* that it was not the product of fear of retaliation. I then vacated my decision to grant a new trial. The Court of Appeals affirmed the judgment for defendant, and the Supreme Court denied certiorari.

After my decision to vacate the order granting a new trial, plaintiff discovered that defendant was conducting an internal inquiry into allegations of theft and bribery directed against Mr. Scott, among others. In 1985, defendant fired Mr. Scott. Thereafter, certain witnesses who had refused to testify earlier expressed a willingness to come forward and give testimony about the slippery footing at the place of the accident. Plaintiff filed a timely motion for relief from my decision to vacate the order granting a new trial under Rule 60(b) of the Federal Rules of Civil Procedure. After a long delay necessitated by a grand jury investigation and discovery difficulties, in December 1989 I granted the motion and ordered a new trial. On appeal, the Third Circuit affirmed the determination that plaintiff's motion was timely, declining to address the issue of whether the granting of plaintiff's motion constituted an abuse of discretion. *See National Pas-*

*senger R.R. Corp. v. Maylie,* 910 F.2d 1181, 1183–84 (3d Cir.1990).

A second trial was held in April 1991. After a two-week trial, the jury found that defendant's negligence was the proximate cause of the accident and returned a verdict in favor of plaintiff. Specifically, the jury awarded past lost wages of $238,000, lost future earnings of $414,000, and $2 million for pain and suffering. On April 30, judgment was entered in favor of plaintiff in the amount of $2,567,259.60.[1] This motion for a new trial ensued.

## II. Legal Analysis

■ Rule 59(a) does not provide specific grounds for granting a new trial; instead, it states that, after a jury trial, a court may order a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Despite the rule's lack of specificity, it is clear that a court may order a new trial if the verdict was against the weight of the evidence, if the size of the verdict was against the weight of the evidence (i.e., if the jury's award was grossly excessive or inadequate), if counsel engaged in improper conduct that had a prejudicial effect upon the jury, or if the court committed a significant error of law to the prejudice of the moving party.[2] See *Stainton v. Tarantino,* 637 F.Supp. 1051, 1078 (E.D.Pa.1986); 11 Charles A. Wright

& Arthur R. Miller, *Federal Practice and Procedure* § 2805, at 38 (1973).

Defendant's brief in support of its motion raises seven grounds for granting a new trial, which fall into three broad categories. First, defendant contends that the amounts of the jury's awards were contrary to the evidence and grossly excessive. Second, defendant alleges that the court committed various errors in admitting or refusing to admit evidence. Third, defendant argues that the court erred as a matter of law in determining the proper standards for liability and damages. Defendant's contentions will be discussed in turn.[3]

## A. *The amount of the jury's award*

■ The decision whether to grant a motion for a new trial rests in the sound discretion of the court. *See Gutzan v. Altair Airlines,* 766 F.2d 135, 140 (3d Cir. 1985). If the court determines that a jury's award was grossly excessive and not supported by the weight of the evidence, the court may grant a motion for a new trial. *See Stainton,* 637 F.Supp. at 1078. In evaluating a motion for a new trial on the grounds that the jury's award was against the weight of the evidence, the court is not held to the same strict standard that applies to motions for a directed verdict or for a judgment n.o.v. To withstand a motion

---

**1.** The jury's awards, when totalled, amount to $2,652,000.00. While this figure differs from the amount of the judgment, plaintiff does not contend that the entry of judgment in the amount of $2,567,259.60 was improper. I will therefore proceed on the assumption that, accepting the jury's verdict, the entry of judgment in the amount of $2,567,259.60 was appropriate.

**2.** While these are not the sole grounds on which a court may grant a motion for a new trial, they are the only grounds raised in the present action and thus are the only grounds that will be addressed in this memorandum.

**3.** Five months after filing its motion for a new trial, defendant moved for permission to amend its motion, seeking to add, as new grounds for a new trial, that it had discovered new evidence. The motion to amend must be denied. The Third Circuit has uniformly held "that a district court is without authority to grant a new trial for reasons assigned after the mandatory 10 day

period under Rule 59(b)." *Arkwright Mut. Ins. Co. v. Philadelphia Elec. Co.,* 427 F.2d 1273, 1276 (3d Cir.1970); *see also Massaro v. United States Lines Co.,* 307 F.2d 299, 303 (3d Cir.1962); *Russell v. Monongahela Ry. Co.,* 262 F.2d 349, 354 (3d Cir.1958); *Shushereba v. R.B. Indus.,* 104 F.R.D. 524, 529–30 (W.D.Pa.1985); *Bucantis v. Midland–Ross Corp.,* 81 F.R.D. 623, 624 (E.D.Pa. 1979); *GBS Meat Indus. Pty. Ltd. v. Kress–Dobkin Co.,* 474 F.Supp. 1357 (W.D.Pa.1979), *aff'd,* 622 F.2d 578 (3d Cir.1980). Defendant is correct that in the Eleventh Circuit a district court may, in the exercise of its discretion, allow a party to amend a timely motion for a new trial after the ten-day period of Rule 59(b) has expired. *See Pate v. Seaboard R.R., Inc.,* 819 F.2d 1074, 1084–85 (11th Cir.1987). I remain bound, however, by the rules of this Circuit. Defendant's argument based on new evidence is best addressed in a motion for relief from the judgment under Rule 60(b). Defendant has filed such a motion separately, and that motion has been denied in a separate memorandum.

for a new trial, it is not sufficient that the jury's verdict is supported by substantial evidence; if there is substantial evidence to support the verdict, but the weight of the evidence is against the verdict, the court may order a new trial. See *Keystone Floor Prods. v. Beattie Mfg. Co.,* 432 F.Supp. 869, 876 (E.D.Pa.1977).

■ Nevertheless, the court should not set aside a verdict and order a new trial merely because, had the trial been a bench trial, it would have awarded a sum different from the sum the jury determined to be appropriate. Although the court should not approve clear miscarriages of justice, the court must give due respect to the jury's traditional and valued role as finder of fact and must recognize that, even if granting the motion would result in the trying of the case before a new jury, to a certain extent granting a motion for a new trial represents a substitution by the court of its own judgment for that of the jury. *See Lind v. Schenley Industries,* 278 F.2d 79, 90 (3d Cir.), *cert. denied,* 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960). For this reason, a court should be reluctant to grant a new trial unless it is apparent that the jury has reached a seriously erroneous result.

The jury in the present case awarded damages for lost past wages, loss of future earning capacity, and pain and suffering. Defendant contends that the awards under all three headings were excessive and contrary to the weight of the evidence. Because each category of damages presents different issues, they must be addressed separately.

1. Past wages

■ Defendant claims that the jury's award of $238,000 in lost past wages was grossly excessive and not supported by the evidence. First, it contends, there was undisputed evidence that plaintiff could have obtained other employment and thus mitigated his losses. Dr. John L. Sbarbaro, Jr., testifying for defendant, stated that in his opinion plaintiff was capable of light work. In addition, Philip Spergel, Ed.D., a vocational expert, testified that jobs were avail-able for individuals with plaintiff's limitations, and that plaintiff would have been capable of earning approximately $11,000 in 1982 and that, as plaintiff's condition improved, the income he was capable of earning would have risen steadily to nearly $25,000 by 1987, after which time it would level off. By defendant's calculations, plaintiff was capable of earning after-tax wages of $152,672 between the time of the accident and the time of trial. Thus, according to defendant, the actual wage loss that plaintiff was entitled to recover was approximately $22,000.

Even if the jury was entitled to disregard defendant's evidence on mitigation of damages, defendant argues, its award was unfounded in the evidence. According to defendant, both parties agreed that plaintiff's lost past wages for his job with defendant amounted to $175,000; defendant contends that there was no evidence that would support an award greater than this amount. Thus, defendant argues, the jury could only have arrived at the $238,000 figure through speculation, conjecture, or improper motive.

Defendant's first contention is without merit. The evidence presented to the jury concerning plaintiff's past ability to work was hardly uncontradicted. Dr. Randall N. Smith, plaintiff's physician, testified that, in his opinion, plaintiff was unable to work, and that he had advised plaintiff against working. Dr. Maurice Romy, a certified neurosurgeon, also stated his belief that plaintiff was unable to work. Moreover, on cross-examination, defendant's vocational expert stated that a person with the limitations identified by defendant's medical experts would have difficulty maintaining employment. There was thus conflicting evidence before the jury. With due respect for the jury's role as factfinder, it can hardly be said that the jury ignored the weight of the evidence in its decision not to reduce plaintiff's lost past wages, despite defendant's contention that plaintiff could have mitigated his losses.

■ Defendant's second contention, however, has some merit. Defendant does misstate the evidence before the jury concern-

ing the amount of plaintiff's past losses. Although the parties agreed that plaintiff's past wage losses amounted to $175,000, the parties also agreed that plaintiff suffered a loss of benefits amounting to $4,700 per year. The jury was entitled to consider these in calculating plaintiff's losses. Thus, according to the figures agreed to by the parties, the plaintiff's total loss of compensation from his job with defendant was $222,000, not $175,000. This amount, however, is still less than the $238,000 that the jury awarded in lost past compensation.

Neither party presented evidence concerning lost past compensation beyond that detailed above. The jury therefore had no evidence before it from which it could conclude that plaintiff's lost past compensation amounted to $238,000. There is no evidence, however, that the jury's conclusion was the result of passion or prejudice on the part of the jury, of judicial error, or of improper suggestion on the part of plaintiff's counsel; rather, it seems likely that the jury simply erred in its calculation. I will therefore offer plaintiff the opportunity to remit $16,000 of the jury's award, representing the difference between the jury's award and the maximum of what the jury could have found on the evidence before it. If plaintiff chooses not to accept the remittitur, a new trial on the issue of damages will be necessary. *See Kazan v. Wolinski*, 721 F.2d 911, 913 (3d Cir.1983).

### 2. Future earnings

■ Defendant claims that the jury's award of $414,000 for lost future earnings was more than eight times the actual loss demonstrated by the undisputed evidence. Again, defendant mischaracterizes the evidence. Even if the jury accepted defendant's argument that plaintiff was capable of performing light work, the jury could have allowed for future earnings and still arrived at the $414,000 figure.

At the time of the trial, plaintiff was 39 years old; the jury determined that plaintiff would have worked until the age of 62. Projecting the figures agreed to by the parties as representing plaintiff's lost 1991 earnings from defendant ($20,000 net

wages plus $4,700 benefits) over 23 years, plaintiff's future losses, if plaintiff were unable to work another day in his life, would amount to $568,100. The jury did not award plaintiff this amount, however; instead, it awarded him the lesser amount of $414,000. The size of the jury's award suggests that, despite defendant's contention, the jury did take into account plaintiff's future earning potential in formulating the award. Indeed, based on projections from the 1991 lost earnings figure, the jury could have concluded that plaintiff would earn up to $154,100 in the future and still set his lost future earnings at $414,-000. Given that there was credible evidence before the jury that plaintiff was currently unable to work and that his future ability to work was severely restricted, I conclude that the jury's determination was not against the weight of the evidence.

### 3. Pain and Suffering

The calculation of damages for pain and suffering is peculiarly within the province of the jury. Whereas damages for lost wages are susceptible to a level of mathematical precision, there is no market for pain and suffering to which the jury may turn for assistance in determining how much a plaintiff is entitled to recover. In recognition of the primacy of the jury's role in assessing damages for pain and suffering, the Third Circuit has written that a new trial should not be granted because of excessive damages unless the amount awarded "is so excessive or irrational as to shock the conscience of the court." *Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223, 1232 (3d Cir.1989).

■ In considering whether an award of damages is excessive, a court need not ignore awards that have been made in other cases involving similar injuries. *See id.* at 1230. The court should, however, bear in mind, when assessing the relevance of such other awards, that "each verdict revolves around a unique set of facts and circumstances." *Id.* The severity of an individual plaintiff's injury, the manner in which that plaintiff experiences pain and suffering, and the anticipated span of time

during which plaintiff can be expected to experience the pain and suffering are all individual factors that greatly complicate an attempt to compare the bottom-line verdicts in different cases.

■ The jury in the present case awarded $2 million for pain and suffering. Defendant argues that, in the present case, the evidence concerning the severity of plaintiff's injury was at most equivocal, and was certainly insufficient to support such a large award. By way of comparison, defendant lists a number of cases in which pain and suffering awards ranging from under $10,000 to $275,000 were found not unreasonable for back injuries that defendant claims are comparable to plaintiff's. *See Moore v. Chesapeake & Ohio Ry. Co.*, 493 F.Supp. 1252, 1267 (S.D.W.Va. 1980) ($150,000 verdict for plaintiff with herniated disc is not excessive), *aff'd*, 649 F.2d 1004 (4th Cir.1981); *Krow v. Union Pacific Ry. Co.*, 685 P.2d 782 (Colo.App. 1984) ($9,233 jury award for pain and suffering adequate for plaintiff with herniated disc); *Seaboard Coast Line R.R. v. Towns*, 156 Ga.App. 24, 274 S.E.2d 74 (1980) ($220,000 jury verdict not excessive for plaintiff with traumatized disc who is limited to light work); *Dunn v. St. Louis–San Francisco Ry. Co.*, 621 S.W.2d 245 (Mo.1981) ($275,000 jury verdict not excessive for plaintiff with herniated disc who is unable to perform physical labor), *cert. denied*, 454 U.S. 1145, 102 S.Ct. 1007, 71 L.Ed.2d 298 (1982).

Defendant's citation to cases in which a jury award has been found not excessive is of limited utility in the present case. In every case of this type in which liability is found, there is a range of reasonable recovery within which the fact-finder must determine an appropriate figure. In the cases where awards were determined not to be excessive, the courts' only determination was that the award fell within that range. None of the courts' opinions contained any indication of the *maximum* amount that each plaintiff could have reasonably recovered, given his or her peculiar circumstances. On a motion for a new trial, however, a court may not order a new trial, or

in the alternative a remittitur, unless the jury's award exceeds "the 'maximum recovery' that does not shock the judicial conscience." *See Gumbs v. Pueblo Int'l, Inc.*, 823 F.2d 768, 774 (3d Cir.1987).

Accordingly, I turn to cases in which courts have determined that jury awards exceeded the maximum recovery that was reasonable given the extent of the particular plaintiff's injuries. Defendants would have me rely on the Second Circuit's decision in *Nairn v. National Railroad Passenger Corp.*, 837 F.2d 565 (2d Cir.1988). In that case, the court determined that a pain and suffering award of $400,000 for "a 15% permanent back impairment" that was painful and that precluded plaintiff from engaging in work more demanding than "'medium duty' ... which would entail lifting no more than 50 pounds" was so large that it "shock[ed] the judicial conscience." *Id.* at 568. In other cases involving non-paralytic back injuries, courts have set maximum reasonable pain and suffering awards at amounts ranging from $100,000 to approximately $285,000, based on the circumstances involved in each case. *See Williams v. Chevron U.S.A., Inc.*, 875 F.2d 501, 507 (5th Cir.1989) (anything over $200,000 unreasonable); *Gumbs*, 823 F.2d at 768 (anything over $235,000 unreasonable); *Williams v. Martin Marietta Alumina, Inc.*, 817 F.2d 1030, 1041 (3d Cir. 1987) (anything over $100,000 unreasonable); *Harper v. Zapata Off–Shore Co.*, 741 F.2d 87, 93 (5th Cir.1984) (after a general verdict of $1 million, of which the court estimated $485,000 was for pain and suffering, court ordered remittitur of $200,000 of pain and suffering award). These cases do not draw a firm line above which an award of damages, in the present case, would be presumptively excessive and unreasonable. They do, however, provide some guidance for evaluating the jury's award of $2 million.

In the present case, there was substantial evidence on which the jury could have based a large award of damages for pain and suffering. Plaintiff testified to continuing pain after the accident, including episodes of pain so severe that he was unable to sleep and was unable to relieve

the pain by either sitting, standing, or lying down. Plaintiff testified that he could engage in some physical activity, but that afterwards he would experience pain that would make further activity impossible for a period of time. There was evidence that plaintiff's back condition required three episodes of hospitalization, including two incidents of surgery, and that plaintiff had also required hospitalization and psychiatric treatment for nervous conditions brought on by the accident and subsequent pain. It is true that defendant presented a doctor who testified that plaintiff's pain should not have been as bad as his complaints indicated. Presented with conflicting testimony concerning the severity of plaintiff's pain, the jury was entitled to find the testimony on one side more credible than the testimony on the other. Moreover, the jury in this case was in the unusual position of being able to assess the continuing effects of plaintiff's injury ten years after the accident occurred; the jury thus was not required to speculate about future effects to the extent necessary in a typical case.

Reviewing the evidence in the present case in the light of previous cases, it appears that Mr. Maylie's injuries were more serious than those involved in the other cases. The plaintiffs in *Gumbs, Martin Marietta, Chevron,* and *Nairn* did not require hospitalization, much less surgery, for their injuries.[4] Mr. Maylie, in contrast, required three episodes of hospitalization for treatment of his back, including two instances of surgery. While the plaintiff in *Harper* did require two episodes of surgery, there was no evidence in that case that the injury had had a significant psychological impact; in contrast, Mr. Maylie required hospitalization on one occasion for depression. In addition, while the Fifth Circuit stated in *Harper* that any pain and suffering award over $285,000 would be

excessive given the extent of the plaintiff's injuries, the usefulness of that figure in the present context is limited, given the passage of seven years, with accompanying inflation, between the Fifth Circuit's decision and the jury's decision in the present case. I therefore conclude that, while the previous cases have some relevance, they do not in and of themselves suggest an upper limit beyond which a jury's verdict in the present case would be unreasonable.

The evidence presented in this case is sufficient to support a large award of damages for pain and suffering. Given the evidence, however, the jury's award of $2 million is one that is "so grossly excessive as to shock the judicial conscience." *See Gumbs,* 823 F.2d at 771. In such cases, the court may, in its discretion, order a remittitur to reduce the award to the maximum amount which the jury could reasonably find. *See id.* at 772. In light of the evidence in the present case, viewed through the prism of relevant case law, I conclude that any award of damages for pain and suffering in the present case in excess of $550,000 would be beyond the range that a jury could reasonably award. Accordingly, plaintiff will be ordered to remit $1,450,000 of the jury's award of damages for pain and suffering. If plaintiff chooses not to accede to the remittitur, a new trial on the issue of damages will be held.

## B. *Evidentiary rulings*

Defendant finds fault with several of my decisions to admit or exclude evidence. Obviously, if I determine that my rulings were correct, defendant is not entitled to a new trial on the basis of the alleged error. Even if I find that the rulings were erroneous, defendant must demonstrate that it was prejudiced by the error if it hopes to

---

**4.** In this regard, *Gumbs* is particularly noteworthy. In that case, the plaintiff had slipped and fallen on spilled cooking oil on a supermarket floor. Doctors diagnosed her injury as a sprained coccyx; there was conflicting evidence of two herniated discs. While the plaintiff complained that her pain limited her activities, the Third Circuit emphasized that she did not require hospitalization and missed no work. The court therefore reduced a $575,000 pain and suffering award to $235,000. *See Gumbs,* 823 F.2d at 775. That award suggests that the Third Circuit would approve a substantially larger award in a case, such as the present one, in which the injuries complained of are markedly more severe.

gain a new trial. There are four alleged evidentiary errors.

### 1. Failure to strike testimony of Dr. Smith concerning 1981 surgery

At trial, Dr. Randall N. Smith testified for plaintiff concerning plaintiff's 1981 surgery for a herniated disk. Dr. Smith testified that he was present for the surgery, and described the procedure in detail. This evidence was important in resolving the conflict over whether plaintiff in fact suffered a herniated disk. Defendant did not object to the testimony. On cross-examination, defendant confronted Dr. Smith with the fact that he was not listed as present in the hospital records. Dr. Smith then admitted that he could not be 100 percent sure that he had been present at the surgery, although he remained firm in his belief that he had.

Defendant took no immediate action to object to the admission of Dr. Smith's testimony, but on the day following the testimony defendant moved to strike, on the grounds that it was not proper to place before the jury a description of the surgery at which Dr. Smith was not absolutely certain he was present. I determined that, because the weakness of Dr. Smith's testimony had been revealed to the jury, the jury could properly determine how much weight to give it. I therefore denied the motion to strike. Defendant claims that this was prejudicial error.

Rule 602 of the Federal Rules of Evidence allows a witness to testify where "evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." This does not mean that the proponent of the evidence must show with absolute certainty that the witness has personal knowledge; rather, it is sufficient if the proponent introduces evidence sufficient to allow a reasonable person to conclude that the witness in fact perceived what he testified to. *See M.B.A.F.B. Federal Credit Union v. Cumis Ins. Soc.*, 681 F.2d 930, 932 (4th Cir. 1982). Once this threshold has been met, it is for the jury to determine what weight to give the witness's testimony. I conclude that plaintiff met this threshold, and that it was not error to refuse to strike the testimony of Dr. Smith.

### 2. Admission of photographs of the accident site

At trial, plaintiff offered photographs of the site of the accident, which were admitted over defendant's objections. Defendant objected on the grounds that the photographs were taken after a rain storm, and therefore showed ground conditions different from those that had prevailed at the time of the accident. Defendant now claims that the admission of the photographs was prejudicial error.

Although the ground conditions at the time of the accident were an important issue at trial, the photographs were not admitted as evidence of those conditions. Rather, they were admitted to show the general layout of the worksite, a purpose that was clearly relevant to issues at trial and that helped the jury to understand the circumstances in which the accident occurred. Moreover, the jury was informed that the photographs did not purport to represent the ground conditions at the time of the accident. Although there was conflicting testimony concerning whether or not the area was wet at the time of the accident, the photographs were not introduced as part of that dispute. The admission of the photographs was not error.

### 3. Admission of the rebuttal testimony of Dr. Swartz

Another hotly contested piece of evidence at trial was a myelogram of plaintiff's spine taken shortly after plaintiff's accident. During his case in chief, plaintiff presented testimony from plaintiff's treating physician, Dr. Randall N. Smith, and plaintiff's expert in neurosurgery, Dr. Maurice Romy, to the effect that the myelogram revealed a herniated disk. Shortly before the close of his case, plaintiff sought to present testimony of Dr. Joel D. Swartz, an expert in neuroradiology, concerning the myelogram. Although Dr. Swartz had not mentioned this myelogram in his expert report, plaintiff anticipated

that defendant would present an expert who would testify that the myelogram did not reveal a herniated disk; plaintiff sought to present Dr. Swartz's testimony as anticipatory rebuttal. On defendant's timely objection, I ruled that it would be inappropriate to present rebuttal evidence before defendant had put on its case. Once defendant completed its case, which included expert review of the myelogram in question, Dr. Swartz was permitted to retake the stand and to testify about the myelogram only. Defendant claims that this was error.

■ The decision to permit rebuttal testimony is committed to the sound discretion of the court. *See Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 21 (3d Cir.1984). Although the testimony of Dr. Swartz certainly could have been presented as part of plaintiff's case in chief had Dr. Swartz included a review of the myelogram in his expert report, the testimony offered on rebuttal was narrowly tailored to challenge the methodology and conclusions of defendant's experts. As such, its admission did not constitute an abuse of discretion.

■ Even if the admission of Dr. Swartz's testimony were thought to constitute an abuse of discretion, however, defendant has failed to show prejudice. Dr. Swartz's testimony was not the only testimony from which the jury could have concluded that the 1981 myelogram indicated a herniated disk: both plaintiff's treating physician, Dr. Randall N. Smith, and plaintiff's expert in neurosurgery, Dr. Maurice Romy, testified that the myelogram revealed a herniated disk. Defendant was aware of the existence of the myelogram, used the myelogram as part of its case, and had previously cross-examined two of plaintiff's experts concerning the myelogram; defendant also knew of Dr. Swartz's credentials and had previously cross-examined Dr. Swartz on topics other than the myelogram. Therefore, although defendant did not have the benefit of an expert report from Dr. Swartz concerning the myelogram, defendant was nevertheless in a position to conduct an effective cross-examination of Dr. Swartz concerning the myelogram. Finally, defendant has failed to show a probability that the testimony of Dr. Swartz persuaded the jury.

In sum, I am of the view that allowing Dr. Swartz's rebuttal testimony was not error. And I am further of the view that, if it was error, it was not prejudicial error warranting a new trial.

4. Refusal to allow testimony of Dr. Shuman with respect to surveillance film

■ At trial, defendant sought to present the testimony of Dr. Sandra Shuman concerning several surveillance tapes of plaintiff taken by defendant. Because Dr. Shuman's expert report did not state that she had examined the tapes, she was not permitted to give her opinion of the tapes at trial. Defendant claims that this was prejudicial error.

Rule 26 of the Local Rules of Civil Procedure requires the exchange of "all reports of medical examinations" of a plaintiff in a personal injury case. Under Rule 26(b)(2), a medical examination includes "any interview, observation, physical or mental examination, and any other scientific or medical technique or practice designed to obtain information, respecting the medical history, condition, diagnosis and/or prognosis, of the person examined."

Dr. Shuman's review of defendant's surveillance film, which occurred after she had filed her report of a previous examination, constitutes a medical examination within the meaning of the Local Rules. The Rules therefore required that Dr. Shuman make a report of her examination, and that plaintiff be given a copy of the report. Since this was not done, Rule 26(c) permits the exclusion of her testimony concerning the surveillance film. Defendant's contention is without merit.

C. *Substantive legal determinations*

1. Measure of lost income

In accordance with *Norfolk & Western Railway Co. v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), plaintiff

was awarded damages for loss of income based on a projected after-tax income of eighty percent of plaintiff's projected gross income. In determining the amount of income that plaintiff would have paid in taxes, however, railroad retirement taxes were not taken into account. Defendant claims that this was error, and that with the inclusion of railroad retirement taxes, plaintiff's projected gross income should have been reduced by thirty percent, rather than by twenty percent.

At trial, plaintiff's counsel represented to the court that the value of the benefits package that plaintiff lost after his injury was approximately $13,000 per year if one took into account the value of his eventual retirement pension, or $4,700 if the value of the pension was excluded. Defendant stipulated to the $4,700 figure for the present value of plaintiff's benefits, but refused to consider inclusion of the amount of plaintiff's lost retirement benefits. Based on this refusal, I determined that the $4,700 figure would be used to represent the value of plaintiff's benefits, and that no deduction would be allowed from plaintiff's gross income for railroad retirement taxes.

Defendant cites *Liepelt* in support of its contention that my decision was erroneous. *Liepelt* does not support defendant's position, however: that case involved only a deduction for income taxes, a deduction that was applied in the present case. *See Liepelt*, 444 U.S. at 493–94, 100 S.Ct. at 757–58. Defendant also cites, by way of analogy, two Fifth Circuit cases in which Social Security taxes were deducted from the plaintiff's gross income in order to calculate damages. *See Rachal v. Ingram Corp.*, 795 F.2d 1210, 1218 (5th Cir.1986); *Madore v. Ingram Tank Ships, Inc.*, 732 F.2d 475, 479 (5th Cir.1984).

■ I do not find the Social Security cases compelling, although not for the rea-

son cited by plaintiff. Plaintiff argues that informing the jury of railroad retirement taxes would implicitly inform them of the existence of railroad pension benefits, and that evidence of such benefits is not admissible in a jury trial. *See Eichel v. New York Central R.R.*, 375 U.S. 253, 254–55, 84 S.Ct. 316, 317–18, 11 L.Ed.2d 307 (1963). *Eichel* arose on facts readily distinguishable from those in the present case, however. There, the plaintiff was actually receiving a pension of $190 per month; the Court held that evidence of the pension was inadmissible because of the danger that the jury would improperly consider the pension in mitigation of the plaintiff's damages. *See id.* Here, in contrast, plaintiff describes the pension as a benefit that plaintiff has lost as a result of his accident. Under such circumstances, the jury could not improperly reduce its award to plaintiff on the basis of the pension; if anything, the loss of the pension would be considered an element of damages to which plaintiff would be entitled.

Although *Eichel* does not provide plaintiff with the support he desires, I nevertheless conclude that, under the circumstances presented in this case, plaintiff's income should not be reduced by the amount of railroad retirement taxes that he would have been required to pay had he not been injured and continued working. Railroad retirement taxes are paid into a fund from which railroad retirement benefits are paid out. *See* 45 U.S.C. § 231n(a). Had plaintiff continued working until the age of sixty-two,[5] and had plaintiff remained in defendant's employ during that time, he would have been eligible for an annuity upon his retirement, paid from the fund into which his railroad retirement taxes had been paid.[6] *See* 45 U.S.C. § 231a(a)(1)(ii). It is undisputed that plaintiff is entitled to recover the value of lost future fringe benefits. *Cf. Jones & Laughlin Steel Corp. v.*

---

**5.** In calculating lost future wages, the jury concluded that plaintiff would have worked until he was 62.

**6.** There is, of course, no way of knowing how long plaintiff would have continued to work for defendant but for his injury. In the absence of evidence that plaintiff would have changed his

employment, however, the conclusion that he would have remained in defendant's employ is a necessary fiction on which the jury may rely to calculate lost future wages. Its use for the purpose of calculating lost future wages suggests that it may be used as well to determine plaintiff's lost eligibility for pension benefits.

*Pfeifer,* 462 U.S. 523, 534 & n. 12, 103 S.Ct. 2541, 2549 & n. 12, 76 L.Ed.2d 768 (1984) (lost fringe benefits "should be included in an ideal evaluation of the worker's loss;" these may include, *inter alia,* retirement and pension plans). It is likewise clear that the $4,700 figure, which the parties agreed represented the value of plaintiff's benefits package, did not include the contingent value of plaintiff's pension benefits. *See* Trial transcript, April 22, 1991, at 83–85. The value that the jury placed on plaintiff's lost future wages and benefits, therefore, did not include the value of his lost railroad retirement pension. It would be inappropriate to deduct from plaintiff's lost salary taxes that, in effect, represented plaintiff's contribution toward a pension without including, as an item of damages, the value of that pension. Because defendant did not consent to inclusion of the value of the pension as an item of damages, it was not error to refuse to reduce plaintiff's lost wages by the amounts he would have had to pay in railroad retirement taxes.

### 2. Contributory Negligence

At trial, I denied defendant's request for an instruction on contributory negligence, concluding that defendant had failed to present sufficient evidence to allow a reasonable jury to conclude that plaintiff had been contributorily negligent. Defendant contends that this was error.

Plaintiff testified at trial that when he was told to empty a trash barrel by himself, he would typically check its contents before lifting it, and if it contained liquid he would empty the barrel by hand rather than lifting it into the dumpster. Plaintiff further testified that at the time of the accident he had been asked by his supervisor, James Warden, to assist Warden in lifting a barrel, and that plaintiff did not himself check the contents of that barrel before lifting it because he assumed Warden had checked.

 Defendant contends that plaintiff's failure, when asked by his supervisor to help empty the barrel, to follow the procedure that plaintiff followed when he was placed in charge of emptying a barrel

constituted evidence of contributory negligence sufficient to support a jury instruction. Defendant's position, however, fails to take into account the circumstances under which plaintiff was injured. An employee may rely on his superior to perform acts that the employee reasonably expects the superior to perform. *Cf. Knierim v. Erie Lackawanna R.R. Co.,* 424 F.2d 745, 747 (2d Cir.1970) (brakemen on train could reasonably expect conductor, their superior, to make sure that train had proper clearance; failure of brakemen to check clearance was not contributory negligence as a matter of law). The fact that, if plaintiff had been acting alone, he would have checked the contents of the barrel before trying to lift it does not convert his failure to check the contents in the face of a request for aid from his supervisor into contributory negligence. Defendant having introduced no further evidence that would suggest contributory negligence, it was proper to refuse to instruct the jury on that point.

### III. Conclusion

Of the arguments set forth in defendant's motion for a new trial, I have determined that two have merit: it appears that the jury's award of lost past compensation was not based on the evidence presented at trial, and that the jury's award of damages for pain and suffering was grossly excessive and not supported by the evidence. In cases where the only error found on a posttrial motion is an excessively large verdict, the Third Circuit has approved the device of ordering a remittitur as an alternative to a new trial. That alternative is particularly appropriate here, given the protracted proceedings that have already occurred. Accordingly I will deny defendant's motion for a new trial, with the condition that plaintiff remit $1,466,000 of the jury's award and accept a judgment in the amount of $1,101,259.60.