**PAUL MORELLI DESIGN, INC.**

v.

**TIFFANY AND COMPANY, et al.**

No. CIV.A.00–1961.

United States District Court, E.D. Pennsylvania.

April 17, 2002.

Arthur G. Raynes, Raynes, Mc Carty, Binder, Ross & Mundy, Manny D. Pokotilow, Caesar, Rivise, Bernsttein, Cohen & Pokotilow, Ltd., Salvatore R. Guerriero, Caesar, Rivise, Bernstein, Cohen & Pokotilow, Phila, for Paul Morelli, Plaintiffs.

James B. Swire, Dorsey & Whitney LLP, New York, NY, Dana Jeffrey Ash, Duane Morris LLP, Phila, Douglas C. Fairhurst, Dorsey & Whitney, New York, NY, Anthony L. Gallia, Duane Morris LLP, J. Scott Kramer, Duane Morris LLP, Phila, for Tiffany and Company, Defendants.

## MEMORANDUM

BARTLE, District Judge.

This is an action for copyright infringement which was tried to a jury. *See* 17 U.S.C. § 101 *et seq.* Plaintiff Paul Morelli Design, Inc. ("Morelli"), a Philadelphia jewelry company, claimed that its original designs of seventeen rings, bracelets, earrings and pendants were copied by defendant Tiffany and Company ("Tiffany") and marketed as Tiffany's Etoile Collection. In answer to a special interrogatory,[1] the jury found that none of the Morelli designs was copyrightable, and we thereupon en-

---

1. The special interrogatory stated in relevant part:

 Has plaintiff Paul Morelli Design, Inc. proven by a preponderance of the evidence that any of its jewelry listed below are works protected by the Copyright Act?

tered judgment in favor of Tiffany. Before the court is plaintiff's timely motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure.[2]

■ Rule 59(a) provides in pertinent part:

A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . .

A new trial should be granted to prevent a miscarriage of justice when the jury's "verdict is contrary to the great weight of the evidence," *Roebuck v. Drexel Univ.*, 852 F.2d 715, 736 (3d Cir.1988), or when the court commits an error of law which prejudices a substantial right of a party. *See Maylie v. Nat'l R.R. Passenger Corp.*, 791 F.Supp. 477, 480 (E.D.Pa.), *aff'd*, 983 F.2d 1051 (3d Cir.1992). In all cases, the authority of a trial court to grant a motion for a new trial "is confided almost entirely to the exercise of [its] discretion." *American Bearing Co. v. Litton Indus., Inc.*, 729 F.2d 943, 948 (3d Cir.1984) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980)).

■ The Constitution grants Congress the power "to promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8. Pursuant to that power, Congress has passed the Copyright Act. Jewelry is included in the category of works which may be copyrighted. 17 U.S.C. § 102(a)(5); *Kieselstein–Cord v. Accessories by Pearl, Inc.*, 632 F.2d 989, 995 (2d Cir.1980). To qualify for copyright protection, a piece of jewelry, like other works, must be original as to its author and possess a minimum level of creativity. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).

Prior to the initiation of this action, applications were filed with the Copyright Office for registration of copyrights on the various jewelry items that are the subject of this lawsuit. *See Morelli v. Tiffany and Co.*, 186 F.Supp.2d 563 (E.D.Pa.2002). The Copyright Office denied the applications on the ground that the jewelry did not contain a sufficient amount of original artistic or sculptural authorship to support copyright registration. The Copyright Office's determination did not preclude plaintiff's action for infringement. In order to sue for copyright infringement, a party must either (1) have obtained a registration of the copyright from the Register of Copyrights in the Library of Congress or (2) have applied for a registration and had the registration refused by the Register. 17 U.S.C. § 411(a). Morelli has satisfied the latter requirement.

The Copyright Act permits the Register of Copyrights to intervene in an infringement action when registration has been refused. *Id.* On December 18, 2001, the court granted the Register's motion to intervene and allowed her to defend the denial of registration for the Morelli jewelry.

I.

Morelli first contends in support of its motion for a new trial that the court erred when it instructed the jury at the beginning of the trial and again in its charge that the decision of the Copyright Office in refusing to register the copyright was enti-

---

**2.** Plaintiff also had a claim for unfair competition. The jury found for the defendant. The motion for new trial does not challenge the jury's verdict in this regard.

tled to "some deference." It is plaintiff's position that we should have informed the jury that its verdict should be "de novo," that is, without any consideration of the decision of the Copyright Office.

The court charged as follows:

At issue here are 17 designs of jewelry which plaintiff submitted to the Copyright Office for registration. The Copyright Office denied the plaintiff copyright registration on each design.

The Copyright Office ruled that the jewelry designs did not contain a sufficient amount of original artistic or sculptural authorship to support copyright registration.

Consistent with Copyright Office practice, the examiner never physically examined the jewelry in issue, although the examiner had pictures of it.

Even when an applicant has been refused copyright registration by the Copyright Office, an applicant may still bring a lawsuit in court for copyright infringement, that is, for copying the work the owner contends is entitled to a copyright.

Thus, Paul Morelli Design, Inc. has the right to bring this lawsuit. In this lawsuit, as explained above, the plaintiff bears the burden of proving by a preponderance of the evidence that his work contains copyrightable subject matter.

*While the decision of the Copyright Office is entitled to some deference, you are not bound by its decision and must decide for yourself the issue of copyrightability of the jewelry designs involved in this case.*

N.T., Feb. 13, 2002, at 112–13 (emphasis added).

 Although courts have articulated various standards for a court or jury to apply when considering the Register's denial of a registration, we have taken the path followed by our colleague Judge Norma Shapiro. Sitting without a jury in a copyright infringement case where the Copyright Office had denied a registration, Judge Shapiro explained in finding for the defendant that she had given "some deference" to the action of the Copyright Office. *Safeguard Business Systems, Inc. v. The Reynolds and Reynolds Co.,* 14 U.S.P.Q.2d 1829, 1832–33 (E.D.Pa.1990). The Court of Appeals affirmed without opinion. *Safeguard Business Systems, Inc. v. The Reynolds and Reynolds Co.,* 919 F.2d 136 (3d Cir.1990). Several other courts have also concluded that the Copyright Office's determination in an infringement action is entitled to "some deference." *See Batjac Prods. Inc. v. GoodTimes Home Video Corp.,* 160 F.3d 1223, 1231 (9th Cir.1998); *Norris Indus., Inc. v. Int'l Tel. and Tel. Corp.,* 696 F.2d 918, 922 (11th Cir.1983).[3]

 We believe this standard strikes the proper balance between a de novo review which plaintiff seeks and the heightened abuse of discretion found in some cases. *See John Muller & Co. v. New York Arrows Soccer Team, Inc.,* 802

---

**3.** It is important to emphasize that a copyright applicant has two avenues it may take simultaneously if the Copyright Office refuses registration. The applicant may appeal the denial to the district court which applies an abuse of discretion standard, the typical standard when reviewing an agency determination. 5 U.S.C. § 706(2)(A). The applicant may also litigate an infringement action, regardless of how a court may rule on the Copyright Office's refusal to register the copyright. *OddzOn Prods., Inc. v. Oman,* 924 F.2d 346, 347 (D.C.Cir.1991). Plaintiff's reliance on *OddzOn* and *Atari Games Corp. v. Oman,* 888 F.2d 878, 881 (D.C.Cir.1989) is misplaced. These cases involved appeals of the Register of Copyright's refusal of registration pursuant to the Administrative Procedures Act and did not address the standard of review in infringement actions.

F.2d 989, 990 (8th Cir.1986). The statute, after all, gives the Register of Copyrights the right to intervene in this action. 17 U.S.C. § 411(a). There would be little point in allowing her to do so if the decision of her office were deemed to be meaningless, as the plaintiff contends. On the other hand, since the statute permits a party whose application was denied to sue for copyright infringement, Congress did not intend, in our view, narrowly to constrain a jury or a court from finding a rejected work to be copyrightable and infringed. Our charge stated, as noted above, that while the decision of the Copyright Office was entitled to some deference, the jury was not bound by that decision and must decide for itself the issue of copyrightability of the jewelry designs involved. Further, we explained to the jury the reason given by the Copyright Office for refusal of registration and further noted that the examiner never saw the Morelli jewelry itself but only pictures of it. The charge gave the jury the appropriate latitude to differ from the Copyright Office without totally ignoring its decision refusing registration. De novo review would not be consistent with the statutory scheme.

## II.

The plaintiff next argues that the court committed error when it precluded certain expert testimony.

Ralph Oman, an attorney, was a former Register of Copyrights who prepared an expert report for the plaintiff but as it turned out was never called as a witness at trial. According to his report, he would first have opined on Copyright Office procedure and legal standards applicable to copyrights. If Mr. Oman so testified, the defense contemplated calling Marybeth Peters, the current Register of Copyrights, to rebut these opinions. The court advised the parties before trial that it was cumulative and a poor use of time to have experts testify concerning the nature of a copyright and the Copyright Office procedures. They agreed. Instead, the court decided in the interest of judicial economy to explain these matters to the jury, both at the beginning and again in its instructions at the end of the trial. The court received input from the parties with respect to what it planned to say and after review by counsel and without objection read a statement to the jury before receiving testimony. To the extent Mr. Oman would have opined on the law, that was a matter for the court. *See Marx & Co. v. Diners' Club*, 550 F.2d 505, 509–10 (2d Cir.1977).

Mr. Oman was also expected to testify that the Morelli designs contained a sufficient amount of creative expression to qualify as original works and that they therefore should have been registered by the Copyright Office. Three other of plaintiff's experts, Rochelle Toner, Dean of the Tyler School of Art of Temple University, Ettagale Blauer, a writer on jewelry and jewelry design, and Richard Posniak, a Professor of Metalwork and Jewelry at the Moore College of Art and Design, were likewise designated to offer opinions that Morelli's jewelry was creative and original. Professor Posniak was never called as a witness. The court granted Dean Toner and Ms. Blauer wide berth to testify about both Morelli's jewelry and Tiffany's jewelry although we did not permit them to declare their ultimate conclusion that the Morelli jewelry was creative and original. We would have restricted Mr. Oman and Professor Posniak in the same way had they taken the stand.

The court has discretion to determine whether an expert *may* testify. Fed. R.Evid. 702, 403; *United States v. Bennett*, 161 F.3d 171, 182 (3d Cir.1998). Rule

702 of the Federal Rules of Evidence provides, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, *may* testify thereto in the form of an opinion or otherwise . . . ." (emphasis added). Clearly, Dean Toner, Ms. Blauer, and Professor Posniak showed no expertise on the subjects of originality and creativity. These terms have legal definitions and nowhere in their reports did these individuals say they were applying those definitions to their opinions. What the plaintiff was really seeking of all of its experts including Mr. Oman was analogous to having expert witnesses testify in a personal injury action that a party's conduct was negligent. *See, e.g., Owen v. Kerr–McGee Corp.,* 698 F.2d 236, 240 (5th Cir.1983).

In this case, the court carefully set forth the legal definitions of originality and creativity as well as the Copyright Office procedures with respect to applications for registration. The jury not only saw and inspected the Morelli and the Tiffany jewelry during the trial but had all of it in the jury room during deliberations. It heard extensive testimony from Paul Morelli,[4] from Dean Toner and Ms. Blauer, and from fact and expert witnesses produced by Tiffany about the origin, design, elements, and manufacture of both the allegedly infringed Sprinkled Diamond Collection of Morelli and the allegedly infringing Etoile Collection of Tiffany. The jury also had before it evidence of other jewelry which bore on originality and creativity as well as relevant documentary exhibits. As

is our practice, we provided each juror with a copy of the charge after it was read.

The jury had everything it needed to render a proper verdict and was fully capable of doing so. Under the circumstances, it would not have been helpful to the jury to have listened to conflicting opinions of either Morelli's or Tiffany's experts [5] on the ultimate issues of originality and creativity when it was fully aware of the pertinent legal principles to apply to the evidence in order to answer the special interrogatory on copyrightability. *See* Fed.R.Evid. 702. The danger of unfair prejudice, confusion of the issues and waste of time by admitting the excluded expert testimony in what was already a lengthy trial substantially outweighed the probative value of such evidence. *See* Fed.R.Evid. 403; *Shahid v. Detroit,* 889 F.2d 1543, 1547–48 (6th Cir.1989); *American Bearing,* 729 F.2d at 949 n. 14.

### III.

■ Plaintiff also argues that the court erroneously refused to instruct the jury that the commercial success of the Morelli jewelry should be considered in determining whether it was original and thus copyrightable. We disagree. The court properly charged, "attractiveness, commercial success and substantial efforts are not factors to be considered in deciding whether a work is original."

Plaintiff relies on the Supreme Court's 1903 decision in *Bleistein v. Donaldson Lithographing Co.,* 188 U.S. 239, 23 S.Ct. 298, 47 L.Ed. 460 (1903). In that action, the Supreme Court reversed the decision of the lower courts which held that the chromolithographs in issue, that is, illus-

**4.** Paul Morelli was the sole shareholder of plaintiff Paul Morelli Design, Inc. and the actual designer of the Morelli jewelry in issue.

**5.** Had Morelli's experts been permitted to testify that the Morelli jewelry was creative and original, Tiffany was prepared to have its expert Cosmo Altobelli testify that the jewelry was not creative or original.

trations prepared for advertisements for a circus, were not subject to copyright protection. Mr. Justice Holmes, writing for the Court, observed that it was not for "persons trained only to the law to constitute themselves final judges of the worth of pictorial illustrations, outside of the narrowest and most obvious limits." *Id.* at 251, 23 S.Ct. 298. He stated that otherwise "some works of genius" would never receive a copyright, and "copyright would be denied to pictures which appealed to a public less educated than the judge." *Id.* at 251–52, 23 S.Ct. 298. He then commented in dicta, "Yet if they [the pictures mentioned previously] command the interest of any public, they have a commercial value,—it would be bold to say that they have not an aesthetic and educational value,—and the taste of any public is not to be treated with contempt." *Id.* at 252, 23 S.Ct. 298. In our view, Justice Holmes was simply reminding the reader that copyright protection is available to the mundane as well as to works that would find their way into places like the Philadelphia Museum of Art or the libraries of the erudite. We do not understand him to say that commercial success is an element of originality.

■ The Supreme Court's much more recent 1991 decision in *Feist* emphasized over and over again that "the originality requirement ... remains the touchstone of copyright protection today." 499 U.S. at 347, 111 S.Ct. 1282. A work is original if it "was independently created by the author (as opposed to copied from other works), and ... it possesses at least some minimal degree of creativity." *Id.* at 345, 111 S.Ct. 1282. If a work meets these requirements, it qualifies for copyright protection. *Id.* It follows from this, the Court ruled, that the "sweat of the brow" of the author is a totally irrelevant consideration. *Id.* at 352–54, 359–60, 111 S.Ct. 1282. While

*Feist* makes no mention of the issue of commercial success, we think it falls into the same category as "sweat of the brow." Neither has anything to do with whether an author's work is original. We also note that in *Feist* the Court held that the plaintiff's telephone directory was not copyrightable even though it appears to have been commercially successful.

Morelli cites no post-*Feist* decision · of any court which concludes that commercial success is a relevant factor in determining copyright protection. On the contrary, several cases have rejected it as a proper consideration. *See Ets–Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1075 (9th Cir. 2000); *Homer Laughlin China Co. v. Oman*, 22 U.S.P.Q.2d 1074, 1076 (D.D.C. 1991); *see also* 1–2 Melvin B. Nimmer & David Nimmer, *Nimmer on Copyright* § 2.09; *Compendium of Copyright Office Practices*, Compendium II, § 505.02(a) (1984). Even Morelli's expert Ralph Oman, the former Register of Copyrights, agrees with the court. At page 15 of his expert report, he quotes Compendium II that, "copyrightability does not depend on aesthetic appeal, *commercial success*, or symbolic value of the work." (emphasis added).

■ We do not leave our common sense at the courthouse door. Works may experience commercial success even without originality and works with originality may enjoy none whatsoever. Nothing has been presented to us showing any correlation between the two. Moreover, under Morelli's theory a work may not be copyrightable at one point when it enjoys no sales but may later become copyrightable if it experiences an upswing in economic fortune. This cannot be. A work is either original when created or it is not. Evidence of commercial success simply does not have "any tendency to make the existence of any fact that is of consequence to

the determination of [copyrightability] more probable or less probable than it would be without the evidence." Fed. R.Evid. 401.

## IV.

We have carefully reviewed the remaining grounds asserted by the plaintiff and find them to be without merit.

## V.

Accordingly, the motion of the plaintiff for new trial will be denied.

## *ORDER*

AND NOW, this 17th day of April, 2002, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of plaintiff Paul Morelli Design, Inc. for a new trial is DENIED.