**PHOENIX REDEVELOPMENT CORPORATION,**
**Appellant,**

v.

**Timothy J. WALKER, Respondent.**

**No. WD 43631.**

Missouri Court of Appeals,
Western District.

June 18, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 30, 1991.

Application to Transfer Denied
Sept. 10, 1991.

**LOWENSTEIN, Judge.**

Condemnor Phoenix Redevelopment Corporation [1] ("Phoenix") appeals a verdict in favor of condemnee Timothy J. Walker.

Phoenix is a corporation created under Chapter 353 to redevelop an area of Kansas City known as Union Hill. Phoenix tried but was unable to buy Walker's property located at 11–13 East 31st Street in Kansas City. Phoenix filed this petition to have the property condemned. The court appointed commissioners who awarded Walker $54,000 for the taking. Both parties filed exceptions, so a jury trial was conducted. The jury awarded Walker $78,-000 in damages. Phoenix received a credit for having paid the commissioners' award plus interest, leaving a balance of $25,-887.48. This appeal followed.

Phoenix's issues on appeal all concern the admissibility of comparable sales evidence.

The general rule of law is that a property owner is entitled to "just compensation" for the taking of his land. Mo. Const. Art. I, § 26. "Just compensation" is defined as what a reasonable buyer, who was willing but did not have to purchase, would give *and* what a seller, who was willing but did not have to sell, would take, with damages measured at the time of the taking. *In re Armory Site in Kansas City*, 282 S.W.2d 464, 470 (Mo.1955). Comparable sales prices, which are prices of properties similarly situated to that involved in the condemnation proceeding, are admissible to aid the jury in determining the amount of damages. *Highway and Transp. Com'n v. Vitt*, 785 S.W.2d 708, 713 (Mo.App.1990). The party seeking to admit comparable sales evidence bears the burden of showing that the sale was voluntary. *Board of Public Bldgs. v. GMT Corp.*, 580 S.W.2d 519, 523 (Mo.App.1979); *Highway and Transp. Com'n v. Vitt*, 785 S.W.2d at 713. This burden is discharged *prima facie*, however, because the law presumes the sale price was "freely fixed and

David A. Welte, James C. Bowers, Jr. and Bradley C. Nielsen, Kansas City, for appellant.

Lyle L. Odo, Platte City, for respondent.

Before TURNAGE, J., Presiding, and LOWENSTEIN and BRECKENRIDGE, JJ.

---

1. Phoenix is the successor to the Union Hill Development Company which was granted the right to acquire and redevelop the neighborhood in question.

not under compulsion." *Board of Public Bldgs. v. GMT Corp.*, 580 S.W.2d at 523. The burden then shifts to the opposing party to produce evidence that the sale was not voluntary. *Id.*

Jurisdictions are split on the issue of whether a purchaser's power of eminent domain by itself renders a sale compulsory and not voluntary. The rule in Missouri is that the price of property sold to a purchaser with the power of eminent domain is admissible EXCEPT when (1) the offeror's own evidence shows the sales were made after condemnation proceedings started; or (2) there is evidence from which a trial judge reasonably should have concluded that the sale was not voluntary; or (3) the opposing party produces other evidence that the sale was not voluntary. *Board of Public Bldgs. v. GMT Corp., supra,* 580 S.W.2d at 524. The court in *Board of Public Bldgs.* summed up the rule by stating that comparable sales figures should be excluded when the evidence shows the sale was made under the threat of condemnation. *Id.; Highway and Transp. Com'n v. Vitt,* 785 S.W.2d at 714. "Threat of condemnation" means that the condemning authority has a fixed purpose to institute condemnation proceedings if it cannot buy the property at a satisfactory price, or that the condemnor threatened the seller with condemnation if a satisfactory sale price was not agreed upon. *Id.*

Walker's property, measures about 7,100 square feet. Prior uses of the property included a residence, a restaurant and a punk rock bar. The building was partially destroyed by fire before condemnation, and Walker seeks to have the property valued as vacant ground. Each party's expert testified the highest and best use would be as vacant ground for future development because it was not feasible to rebuild the partially burned structure.

Walker introduced comparable sales evidence using five pieces of property in the Union Hill area. Walker relied most heavily on property located at 3101 to 3109 Main Street, Kansas City, Missouri. This property was separated from Walker's property by an alley and will be referred to as the "Alley" property. This property was sold to the now demised predecessor of Phoenix, Union Hill in June 1989. The property measured about 13,246 square feet. Walker's expert testified it sold for $250,000, and Phoenix's expert testified it sold for $230,000. Including the cost of razing a prior-existing building, Walker's expert testified that the price per square foot equalled $20.63. Using this value as a comparable sale, Walker's expert testified just compensation for his property was $117,000.[2]

Walker's expert also testified that the other four properties sold at prices ranging from $9.67 to $11.90 per square foot. Phoenix did not object to any of Walker's comparable sales. On cross-examination, however, Phoenix elicited testimony the Alley property was sold under the threat of condemnation by Union Hill.

Phoenix in its case attempted to introduce comparable sales evidence of the sale of four parcels of property, all but one of which was *located* on the *same block as* the *Alley* and *Walker* properties. Walker objected on the basis that the sales were made under the threat of condemnation. The trial court interrupted the testimony of Phoenix's witness to allow Phoenix to make an offer of proof.

The Phoenix offer of proof consisted of the following comparable sales:

(1) *3119 Main* (admitted by trial court):
   (a) Transaction date—March 1988
   (b) Sale price—$50,000
   (c) Square feet—6,525
   (d) Price per square foot—$7.66
   (e) Seller—Bryant Upjohn Estate
   (f) Prior Use—paved parking lot
   (g) Voluntariness of Sale—Witness Block, president of Union Hill Acquisitions, which owns Phoenix Redevelopment Corp., testified Phoenix had the

2. Walker's expert used the following formula: [7,100 sq. ft. × $20.63 per sq. ft.] × .85 = $117,178. He made a 15 per cent reduction because Walker's property was located a block off of Main Street. He then rounded the figure to $117,000. Not including the cost of razing the partially destroyed building, the price per square foot amounted to $18.87.

power of eminent domain at the time of the transaction, but that Phoenix never threatened condemnation.

(2) *3117 Main* (Marcone—not admitted):

(a) Transaction date—May 1988

(b) Sale price—$105,000

(c) Square feet—6,525

(d) Price per square foot—not in the record

(e) Seller—Mrs. Burt Lyon

(f) Prior Use—Marcone Appliance Parts Co.

(g) Voluntariness of Sale—Witness Block testified Phoenix had the power of eminent domain at the time of the transaction, but that Phoenix never threatened condemnation.

(3) *12–22 East 31st Terrace* (From Union Hill—not admitted):

(a) Transaction date—February 1988

(b) Sale price—$33,800

(c) Square feet—28,400

(d) Price per square foot—$1.19

(e) Seller—Union Hill Development Co.

(f) Prior Use—vacant ground

(g) Voluntariness of Sale—the record is unclear but it appears that Union Hill and Phoenix entered into a contract for the transfer of redevelopment rights in August 1987, that the city approved Phoenix as the redeveloper in December 1987, and that the real estate portion of the contract was closed in February 1988. Witness Block, testified that Phoenix acquired the right to condemn in December 1987, but that right did not apply to Union Hill properties that Phoenix had contracted to buy prior to December 1987. Phoenix contracted to buy 12–22 East 31st Terrace prior to December 1987, although the sale did not occur until February 1988.

(4) *10–12 East 31st Street* (From Union Hill—not admitted):

(a) Transaction date—February 1988

(b) Sale price—$41,000

(c) Square feet—5,000 building; 6,000 lot

(d) Price per square foot—$1.19

(e) Seller—Union Hill Development Co.

(f) Voluntariness of Sale—same as 12–22 East 31st Terrace, above.

Walker objected to the offer of proof for several reasons. First, Walker argued that testimony regarding the properties located at 12–22 East 31st Terrace and 10–12 East 31st Street should be stricken as invalid comparables because the per square foot prices of $1.19 and $6.83 were so low that the sales could not have been arms length transactions. Second, Walker objected to the offer of proof regarding the property at 3117 Main (Marcone), arguing that it was improved property and that improved property could not be compared with Walker's unimproved property.

The trial court sustained the objections to the offer of proof regarding the properties located at 12–22 East 31st Terrace and 10–12 East 31st Street, reasoning that the sales were not arms length transactions because at the time of the sale Phoenix was negotiating to buy Union Hill Development Co.'s other assets, as well as its right to condemn. The court sustained Walker's objection to the offer of proof regarding the property located at 3117 Main because there was "no similarity between the purchases."

Of the four properties in Phoenix's offer only the 3119 Main property was admitted. Phoenix's expert testified just compensation for Walker's property would be $49,700, derived from a per square foot price of $7.00. (The Walker evidence, *supra*, ascribed a value of $117,000.)

■ Phoenix's first point on appeal is that the trial court erred in allowing Walker, but not Phoenix, to admit into evidence comparable sales figures derived from properties located in the same neighborhood as Walker's and sold under the threat of condemnation.

Phoenix specifically argues that the Alley property figures should not have been admitted because it was not a voluntary sale. Phoenix elicited testimony from Walker's expert that the Alley property was sold under threat of condemnation. Phoenix failed to timely object to this evi-

dence at trial, so this argument is not preserved for appeal.

■ Phoenix has preserved for appeal the argument that once Walker was allowed to use a comparable sales figure derived from an involuntary sale, the Phoenix also should have been allowed to do the same, referring to the properties located at 12–22 East 31st Terrace and 10–12 East 31st Street. Phoenix relies on the doctrine of curative admissibility, which allows a party to reply to inadmissible evidence introduced by the opposing party with similar evidence if its introduction would remove any unfair prejudice caused by the admission of the earlier inadmissible evidence. The party asserting the doctrine must *not* have *objected* to the earlier inadmissible evidence. *Gevermuehle v. Geimer*, 619 S.W.2d 320, 322 (Mo.App.1981), citing to *Ferguson v. Mo. Pac. R.R. Co.*, 442 S.W.2d 549 (Mo.App.1969).

Walker argues that the comparable sales figure derived from the sale of the Alley property was not "inadmissible" because Phoenix failed to rebut the presumption that that sale was voluntary. This argument fails, though, because when asked why the Alley property's price was $7.00 greater per square foot than the next highest comparable sales figure, Walker's expert replied, "Because it was under threat of condemnation, but it was a free market sale because it hadn't been condemned yet." When asked to clarify, Walker further testified, "Condemnation was in the background ..."

The doctrine of curative admissibility also requires that the rebuttal evidence be of the same type or character as the earlier inadmissible evidence. *Gevermuehle v. Geimer*, 619 S.W.2d at 322. Walker argues that even if the comparable sales figure derived from the sale of the Alley property is inadmissible because the sale was made under the threat of condemnation, Phoenix's rebuttal evidence was not of the same type or character as the Alley property because Phoenix's witness Block testified properties located at 11–22 East 31st Terrace and 10–12 East 31st Street were not sold under threat of condemna-

tion. Walker's argument fails, though, because the trial court sustained Walker's objection to Phoenix's offer of proof on the basis that the sale was not an arm's length transaction because Phoenix sought to buy Union Hill's right to condemn, as well as Union Hill's assets and right to develop. So, according to the record, the sales of the Alley property and the properties located at 12–32 East 31st Terrace and 1–12 East 31st Street were of the same character in that they were all involuntary.

The third requirement of the doctrine of curative admissibility is that the party attempting to reply to the earlier inadmissible evidence must not have objected to that evidence when offered, *Gevermuehle v. Geimer*, 619 S.W.2d at 322, because his objection would protect him on appeal. *Ferguson v. Missouri Pacific R.R. Co.*, 442 S.W.2d at 554. Phoenix meets this requirement because it did not object to the admission of the comparable sales figures from the sale of the properties located at 12–22 East 31st Terrace and 10–12 East 31st Street.

■ Finally, the admission of curative evidence is within the trial court's discretion. *Gevermuehle v. Geimer*, 619 S.W.2d at 322. Based on the foregoing analysis, this court finds the trial court abused its discretion and prejudiced Phoenix in refusing to admit comparable sales figures from the sales of the properties located at 12–22 East 31st Terrace and 10–12 East 31st Street. The point is sustained and calls for a reversal.

For it's second point on appeal, Phoenix argues the trial court erred in not allowing Phoenix to introduce comparable sales of improved property after Walker was allowed to do so. The record shows that Walker's expert testified four of the five properties contained buildings at the time of sale: (1) the Alley property, (2) the property at 36th and Main, and (3) the property at 39th and Main, and (4) the property at 32nd and Linwood, east of Main. These buildings were razed after the sales. This evidence was admitted without objection.

Phoenix then sought to admit the sale of property located at 3117 Main, which contained a building. Walker objected, citing to *State ex rel. State Highway Commission v. Klipsch*, 392 S.W.2d 287 (Mo.1965), for the proposition that sales of improved properties cannot be compared with sales of unimproved properties unless there is substantial evidence regarding the separate values of the improvements and the bare land. The court sustained the objection on the basis that there was "no similarity between the purchases" of Walker's property and the 3117 Main property.

Walker has misstated *Klipsch's* holding. *Klipsch* held that if a comparable sales figure is admitted into evidence, a witness may point out the similarities and differences between the comparable property and the condemned property, but the witness may not testify how much of the comparable's sale price is allocated among the comparable's distinguishing features, such as an improvement, when his testimony depends solely on his opinion and not independent facts. *State ex rel. State Highway Commission v. Klipsch*, 392 S.W.2d at 290. At trial, Phoenix's expert tried to testify, based on his opinion, about how much of 3117 Main's sale price was allocated to the value of the building and how much to the value of the ground. Walker's objection was properly sustained under *Klipsch*. But whether 3117 Main should have been admitted as a comparable is a separate issue.

Both party's experts used the comparable sales approach. Under this approach, the importance of the evidence of proposed comparables depends upon the comparison of four factors: (1) sale dates, (2) distance between the subject property and the proposed comparison property, (3) similarity of location, and (4) the use to which the properties may be adaptable. *Klipsch, supra,* at 289. The trial court has considerable discretion in admitting comparable sales evidence. *Id.* The Walker property was sold in December 1988, the 3117 Main property in May 1988. Walker's property and the 3117 Main property were on the same block. Walker's property faced East 31st Street, the other faced Main Street. Both were zoned C–3, A–2, which is intermediate retail business. Both parties' experts testified the highest and best use for Walker's property was as vacant ground awaiting future development. The 3117 Main property housed the Marcone Appliance Parts Company.

Walker argues the 3117 Main property is dissimilar from his property and from the Walker's comparables containing improvements because the highest and best uses of Walker's property and comparables were as *vacant ground* awaiting future development while the highest and best use of the 3117 Main property was as an *improved property*.

There is no rule of law that prohibits the admission of proposed comparables on the basis that their highest and best uses differ from that of the condemned property. The use to which the property may be adapted is merely one factor of comparison, which goes to weight and not admissibility. The trial court erred in refusing to admit the sale of 3117 Main as a comparable sale. The remaining point of Phoenix need not be addressed due to the disposition of the first two points.

The judgment is reversed and remanded for new trial.