**Charley F. ADAMS, Respondent,**

v.

**BURLINGTON NORTHERN RAILROAD COMPANY, Appellant.**

**No. WD 47059.**

Missouri Court of Appeals, Western District.

Sept. 21, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 2, 1993.

Application to Transfer Denied Dec. 21, 1993.

---

1. The state conceded during oral argument that the sentence was erroneous.

Edward W. Mullen, Kansas City, for appellant.

Gene C. Napier, Kansas City, for respondent.

Before SPINDEN, P.J., and FENNER and HANNA, JJ.

HANNA, Judge.

Plaintiff Charley Adams was an employee of defendant Burlington Northern Railroad Company. On April 23, 1991, plaintiff was permanently injured while operating a track switch in the course of his employment. He sued defendant for negligence based on the Federal Employer's Liability Act, 45 U.S.C. §§ 51 et seq. (FELA). The jury returned a verdict in favor of plaintiff in the amount of $709,150. Defendant appeals.

At issue is the valuation of plaintiffs loss of his retirement benefits. We are concerned here with two separate types of benefits: disability benefits that plaintiff has received since the injury and retirement benefits which are to commence at age 66 (at which time the disability benefits cease). At trial, plaintiff called an expert witness, economist John O. Ward, who testified as to the amount of damages sustained by plaintiff. Mr. Ward calculated plaintiffs lost retirement benefits by adding up the amount that Burlington Northern would have paid to the Internal Revenue Service if plaintiff had continued working to age 66.[1] This evidence was received without objection. Following Ward's testimony concerning the plaintiffs loss of retirement benefits, defendant made an offer of proof.[2]

The offer of proof stated that plaintiff Adams was presently receiving $1,387 per month in *disability* benefits since the date of his injury and will continue to receive disability payments until he reaches retirement age. The proffered evidence was rejected by the trial court. Both parties acknowledge that the evidence that plaintiff was receiving disability benefits is not generally admissible.

Defendant now argues that the trial court erred in refusing to admit the evidence of the disability annuity as an exception to the collateral source rule or under the doctrine of curative admissibility.

Retirement annuities for railroad workers are governed by the Railroad Retirement Act of 1974, 45 U.S.C. §§ 231 et seq. The money for the payment of these annuities is kept in the Railroad Retirement Account maintained in the United States Treasury. 45 U.S.C. § 231n. This account is funded primarily via the Railroad Retirement Tax Act, 26 U.S.C. §§ 3201 et seq. Railroad employers and employees are required to pay "Tier I" and "Tier II" taxes, which are calculated as a percentage of employee compensation, to the I.R.S. See 26 U.S.C. §§ 3201, 3221. The employer is currently taxed at the rates of 7.65% for Tier I and 16.10% for Tier II. 26 U.S.C. § 3221. We are concerned only with the employers contribution.

■ Under FELA, an injured employee is entitled to recover damages for any diminution of the plaintiffs retirement benefits caused by his injury. See, e.g., Boston & Maine R.R. v. Talbert, 360 F.2d 286, 291 (1st Cir.1966); Raines v. New York Cent. R.R. Co., 51 Ill.2d 428, 283 N.E.2d 230, 233–34 (Ill.), cert. denied, 409 U.S. 983, 93 S.Ct. 322, 34 L.Ed.2d 247 (1972). Under the Railroad Retirement Act, retirement benefits received by an employee are calculated as a percentage of employees highest 60 months of compensation. 45 U.S.C. § 231b(b). The individuals years of service are also factored into the equation. Id. Defendant maintains that the correct method of valuation of plaintiffs loss is to calculate the difference between the amount plaintiff would have received had he continued working to retirement age and the amount plaintiff will actually receive. The defendant, however, offered no evidence of this alternate method of calculating lost retirement benefits.

■ In points one and two, defendant claims that the economists testimony opened the door for the introduction of the disability benefits as impeaching testimony. Defendant recognizes that the evidence would not generally be admissible pursuant to Eichel v. New York Cent. R.R. Co., 375 U.S. 253, 255, 84 S.Ct. 316, 317, 11 L.Ed.2d 307 (1963). Defendant cites to three cases in which the plaintiff testified that due to his financial

---

1. Mr. Ward calculated plaintiffs damages based on the projection that plaintiff would have retired at age 66. He testified that based on various government publications, age 66 is a normal retirement age in the railroad industry.

2. This procedure was followed because the court previously ruled the subject matter of the offer inadmissible.

condition, he had to return to work before his injuries healed or was unable to obtain further medical treatment. *See Lange v. Missouri Pacific R.R. Co.,* 703 F.2d 322, 323–24 (8th Cir.1983); *Gladden v. P. Henderson & Co.,* 385 F.2d 480, 482–84 (3d Cir.1967), *cert. denied,* 390 U.S. 1013, 88 S.Ct. 1262, 20 L.Ed.2d 162 (1968); *Moore v. Missouri Pacific R.R. Co.,* 825 S.W.2d 839, 842–43 (Mo. banc 1992). In these cases, the courts allowed the defense to impeach plaintiffs testimony by proving that the plaintiff was receiving disability benefits while off work. Plaintiff's claim of financial distress allowed the defendant to prove other financial assistance was available. Defendant attempts to analogize Ward's testimony that the Tier I and Tier II taxes are compensable entitlements with the plaintiffs voluntary injection of financial hardship in the above cases. In this case, there was no testimony that plaintiff returned to work because of a financial hardship. The cases cited simply do not support defendants position and our independent research finds no support for the admission of this collateral source evidence. Points one and two are denied.

■ The defendant next argues that the court erred because the evidence should have been introduced under the so called doctrine of curative admissibility. This rule allows a party to answer inadmissible evidence introduced by the opposing party with similar inadmissible evidence if its introduction would remove any unfair prejudice caused by the admission of the earlier inadmissible evidence. *Phoenix Redevelopment Corp. v. Walker,* 812 S.W.2d 881, 886 (Mo.App.1991). In order for the doctrine to come into play, the following requirements must be met: the earlier evidence must have been inadmissible, *Id.;* it must not have been objected to when offered, *Id.;* the rebutting evidence is needed to remove an unfair prejudice which might otherwise ensue from the original evidence, *Biener v. St. Louis Pub. Serv. Co.,* 160 S.W.2d 780, 785–86 (Mo.App.1942); and the rebutting evidence must be of the same type or character. *Phoenix Redevelopment,* 812 S.W.2d at 886.

■ The plaintiffs evidence was the diminution of retirement benefits computed by the funds the defendant/employer did not have to pay to the I.R.S. (Tier I and Tier II taxes). Neither the courtroom testimony nor the legal argument of counsel make clear how this evidence translates into damages to the plaintiff. The plaintiff, through the expert testimony, added all the tax payments defendant would have made to the Railroad Retirement Account if plaintiff had continued working until retirement. Plaintiff claims this is the correct measure of damages due to the "actuarial nature" of the railroad retirement system, arguing that because the Railroad Retirement Board must fund benefits with revenues, there is a correlation between revenues and benefits. Any link between the taxes paid and the benefits is too tenuous to provide a true measure of plaintiffs loss.

The statute describes the method for computing retirement benefits. The formula is set out in 45 U.S.C. § 231b(b). To determine the plaintiffs lost retirement benefits, one should simply apply the formula in order to arrive at two numbers: (1) the amount plaintiff would have been entitled to if he had continued to work until age 66, and (2) the amount plaintiff will actually be entitled to. The difference between the two amounts, discounted to present value, represents plaintiffs lost benefits. Plaintiffs evidence, upon proper objection, would not have been admissible. Therefore, this requirement of the curative admissibility doctrine is satisfied.

■ The curative evidence, i.e., that plaintiff would receive disability income from the time of the accident until his retirement date, must be of the same type or character as the earlier inadmissible evidence. *Phoenix Redevelopment,* 812 S.W.2d at 886. Defendant argues that the admission of the disability benefits will show that plaintiff is receiving some benefits from the fund and, therefore, did not lose the entire amount of defendants contribution. Whether this cures the earlier testimony or is of the same type or character and thereby admissible rests to a great extent within the discretion of the trial court. *Elliott v. Mid–Century Ins. Co.,* 701 S.W.2d 462, 466 (Mo.App.1985). We are not prepared to say that the court abused its discretion in denying the offer of proof. It was

within the trial courts discretion to refuse the evidence.

 Granting the trial court discretion is particularly significant under the unique rules of evidence argued here. The defendant made alternative arguments to the court, one in which it claimed that the proffered evidence was admissible as an exception to the collateral source rule and the other in which it acknowledged that the offered evidence was inadmissible. Under these circumstances, it is necessary that the court understand not only what evidence was being offered, but also the theory of its evidentiary admissibility. We have carefully reviewed the defendants offer of proof and find no reference to the collateral source rule or the curative admissibility doctrine or any description that comes close to those two theories of admissibility. The only identification made is the argument that exclusion of the evidence of disability payments will result in double damages. This characterization does not sufficiently inform the trial judge. In order to avoid trial court error and to enable the court to rule intelligently, the burden is on the party offering the evidence to explain the proper grounds for its admission. *In re Estate of King*, 572 S.W.2d 200, 204 (Mo.App. 1978). This is particularly so where the proffered evidence, as here, is normally inadmissible. After arguing that the evidence was admissible as an exception to the collateral source rule, defendant then had to take the inconsistent position that the evidence was not admissible in order to apply the curative admissibility doctrine. The trial court must know what rule of evidence is being invoked and why that rule is applicable. *Lindsey v. P.J. Hamill Transfer Co.*, 404 S.W.2d 397, 400 (Mo.App.1966). Otherwise, the offer will be denied not from want of factual sufficiency, as is the more common case, but from a mistaken premise of law. *Fletcher v. City of Independence*, 708 S.W.2d 158, 174 (Mo.App. 1986). The offer does not establish the proposed admissibility and relevance of the tendered evidence. *See Simpson v. Smith*, 771 S.W.2d 368, 372 (Mo.App.1989).

Finally, defendant claims the plaintiff failed to reduce his future railroad retirement losses to present value as required by *Chesapeake & Ohio Ry. Co. v. Kelly*, 241 U.S. 485, 491, 36 S.Ct. 630, 632, 60 L.Ed. 1117 (1916). We have reviewed Mr. Wards testimony and find defendants assertion to be incorrect. The future retirement annuity losses were reduced to present value. Additionally, the jury was instructed per MAI 8.02 (1991 revision) that any award of future pecuniary damages must be included at present value.

Judgment Affirmed.

All concur.