Melvin RACHEL, Plaintiff,

v.

**CONSOLIDATED RAIL CORP., Defendant.**

No. 5:93 CV 2748.

United States District Court,
N.D. Ohio,
Eastern Division.

April 4, 1995.

Henry H. Wallace, Wallace, Chapas & Jamiolkowski, Pittsburgh, PA, and Joseph A. Collins, Hamburg, NY, for plaintiff.

Michael W. Burns, Burns, White & Hickton, Pittsburgh, PA, and Philip E. Howes, Robert B. Daane, and Paul R. Reiners, Vogelgesang, Howes, Lindamood & Brunn, Canton, OH, for defendant.

## ORDER

SAM H. BELL, District Judge.

The trial of this matter is set to commence on Tuesday, April 4, 1995. Presently pending before the Court are two motions *in limine* filed by the defendant. Having received and reviewed those motions, together with Plaintiff's oppositions thereto, the Court has reached the conclusions delineated in the following opinion and order.

### *Motion to Exclude Testimony of Dr. John Burke*

In its first motion *in limine,* Defendant asks the Court to exclude the testimony of Plaintiff's expert economist, Dr. John Burke. Defendant complains that Dr. Burke's opinion concerning Plaintiff's future economic loss rests in large part on erroneous assumptions about Plaintiff's ability to recover before tax income. Specifically, Defendant faults Dr. Burke for failing to deduct state and local taxes, as well as Tier I and Tier II Railroad Retirement Board Taxes, from his economic projection of Plaintiff's lost future earnings.

### I. Tax Deductions from Income Projections.

In *Norfolk & Western Railway Co. v. Liepelt,* 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), the Supreme Court recognized "after-tax income, rather than ... gross income before taxes," as the true measure of a deceased railway worker's pecuniary contribution toward his family's well-being. *Id.* at 493, 100 S.Ct. at 757. Accordingly, the Court ruled that the jury in a FELA case should be instructed that any damages it awards will not be subject to income tax. *Id.* at 498, 100 S.Ct. at 759–60. In this case, Dr. Burke has deducted federal income taxes

from Plaintiff's projected future earnings, and he has also agreed to make a similar allowance for state and local taxes. Thus, the only remaining question is whether he may include Railroad Retirement Board taxes paid by Plaintiff and Defendant as projected future income that, but for Plaintiff's injury, would have accrued to Plaintiff's benefit.

Pursuant to the Railroad Retirement Act of 1974, 45 U.S.C. § 231 *et seq.,* the Railroad Retirement Board administers disability and retirement annuities for eligible railroad workers, paid from a fund maintained by the United States Treasury. The internal revenue code requires employees and employers alike to contribute tax payments to the annuity fund. 26 U.S.C. §§ 3201, 3221. Both employees and employers presently pay an amount equal to 7.65% of the employee's gross wage in "Tier I" taxes, which taxes sustain the Railroad Retirement Board Disability and Retirement Annuities that supplant social security benefits. The employee pays an additional 4.9% of his total compensation as a "Tier II" tax toward the retirement fund's pension component, and the employer adds an amount equal to 16.1% of the employee's compensation in Tier II taxes. Employees who meet certain minimum eligibility requirements may receive retirement or disability annuities equal to the old-age or disability insurance they would receive under the Social Security Act were they employed in a covered occupation. 45 U.S.C. § 231b(a)(1) & (2). Eligibility for increased retirement annuities (the pension component) depends upon the worker's age and years of service. 45 U.S.C. § 231a. The size of a retiree's annuity is measured as a fixed percent of his highest sixty months of compensation, with certain allowances made based on his years of service. 45 U.S.C. § 231b.

Defendant expects Dr. Burke to offer a projected loss of earnings figure that includes as "fringe benefits" the Tier I and Tier II taxes that Plaintiff and Defendant would have paid in the future but for Plaintiff's disability. Defendant argues that these sums must be excluded under *Liepelt.*

Had Plaintiff continued in Defendant's employ until his natural retirement, he would

have been eligible for a larger retirement annuity. Defendant concedes Plaintiff's right to seek damages that reflect the loss of that bigger annuity. Docket # 19, p. 6. *See Maylie v. National R.R. Passenger Corp.,* 791 F.Supp. 477, 487 (E.D.Pa.1992) (recognizing disabled railroad employee's right to recover value of lost future annuity). But Defendant insists, and the Court must agree, that the total tax contributions by the parties do not fairly approximate the value of Plaintiff's loss. Defendant aptly quotes the Missouri court in *Adams v. Burlington Northern R.R. Co.,* 865 S.W.2d 748, 750 (Mo.Ct.App. 1993): "Any link between the taxes paid and the benefits is too tenuous to provide a true measure of plaintiff's loss." Congress determines the size of the tax contributions and the size of Plaintiff's annuity, and it has no obligation to balance the two. Plaintiff presently receives (in the form of a disability pension and an anticipated base retirement annuity) the value of his Tier I contributions to date. As for the Tier II taxes, the Railroad Retirement Act provides the proper method for determining Plaintiff's expected benefits at § 3(b), 45 U.S.C. § 231b(b). *Adams, id.* at 751. Accordingly, the Court will allow Plaintiff to present evidence of the value of his lost pension benefits calculated in a manner consistent with 45 U.S.C. § 231b(b). It will not, however, permit Dr. Burke to offer his opinion that the Tier I and Tier II taxes that would have been paid by the parties save Plaintiff's injury represent lost fringe benefits for which Plaintiff should be compensated in kind. *Cf. Madore v. Ingram Tank Ships, Inc.,* 732 F.2d 475 (5th Cir.1984) (error to include future social security payments in projected lost income of disabled seaman suing under the Jones Act); *Maylie,* 791 F.Supp. at 487 (court refused to subtract *Plaintiff's* retirement tax contributions from measure of his lost income *solely because* railroad did not agree to allow Plaintiff to show the *value* of his lost retirement annuity).

## II. Deduction of Disability Payments.

Defendant also argues in his first motion *in limine* that any disability benefits Plaintiff has received to date should be deducted from Dr. Burke's projections of lost income. Defendant complains that Plaintiff will receive a windfall should he recover both lost earnings *and* disability payments from a fund supported in part by Defendant. Defendant ignores the potential windfall it would receive should its alleged negligence be compensated from a fund partially subsidized by Plaintiff.

The Court need not measure anew the equities of the situation; in *Eichel v. New York Central Railroad Co.,* 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963), the Supreme Court flatly rejected the position advanced by Defendant. Eichel brought suit against his employer under FELA, claiming that he had been permanently disabled due to the railroad's negligence. *Id.* Seeking to impeach Eichel's testimony concerning his motive for not returning to work, the railroad offered evidence that Eichel was receiving monthly disability pension payments under the Railroad Retirement Act. *Id.* at 254, 84 S.Ct. at 317. The trial court refused to admit the evidence for impeachment purposes, and the Second Circuit Court of Appeals reversed. *Id.*

After granting *certiorari,* the Supreme Court reversed the appellate court. In so doing, the Court made the following observations concerning the propriety of introducing the evidence on the merits of the damage claim:

> Respondent does not dispute that it would be highly improper for the disability pension payments to be considered in mitigation of the damages suffered by petitioner. Thus it has been recognized that:
>
> "The Railroad Retirement Act is substantially a Social Security Act for employees of common carriers.... The benefits received under such a system of social legislation are not directly attributable to the contributions of the employer, so they cannot be considered in mitigation of the damages caused by the employers." *New York, N.H. & H.R. Co. v. Leary,* 204 F.2d 461, 468, *cert. denied,* 346 U.S. 856 [74 S.Ct. 71, 98 L.Ed. 370].

*Eichel,* 375 U.S. at 254, 84 S.Ct. at 317.

Rather than defer (or even cite) to the holding in *Eichel,* Defendant submits the def-

inition of "collateral source" found in *Black's Law Dictionary* in an effort to show that Plaintiff's disability payments do not stem from a collateral source. With all respect to the venerable publication quoted by Defendant, this Court understandably and necessarily finds *Eichel* to be the more persuasive authority. Therefore, Plaintiff's expert will not be required to reduce his projections by the amounts received by Plaintiff as disability payments.

### III. Damages for Unpaid Services.

■ Finally, Defendant has in its first motion asked the Court to exclude evidence of the value to Plaintiff of household services he can no longer perform. Defendant claims damages may not be recovered for this injury under FELA but cites no authority for this proposition. The Court has located two opinions in which circuit courts have allowed a decedent's beneficiaries to introduce evidence of the pecuniary value of "non-market" services rendered by the deceased. *Burlington Northern, Inc. v. Boxberger*, 529 F.2d 284 (9th Cir.1975); *Metcalfe v. Atchison, Topeka & Santa Fe Railway Co.*, 491 F.2d 892 (10th Cir.1974). At this time, the Court cannot say that it would be improper for Plaintiff to present evidence of his similar loss, provided the evidence is concrete in nature.

### Motion to Exclude Reference to 1984 Arbitration Decision

■ In its second motion *in limine*, Defendant asks the Court to preclude Plaintiff's witnesses from making reference to an arbitration decision announced against Defendant in 1984. In that decision, the arbitrator found that Consolidated Rail Corporation violated the terms of its bargaining agreement with the United Transportation Union when it required employees to ride on the side of cars during certain reverse movements that cover more than one mile. Defendant argues that this decision has no bearing on the present litigation, but Plaintiff insists the decision demonstrates Defendant's prior knowledge of the dangers involved in maneuvers requiring side-riding, such as that in which Plaintiff himself was injured.

On the evidence before it, the Court does not believe the arbitration decision to be relevant to any contested issue in this lawsuit. Nowhere does the arbitrator mention any safety concerns that motivated his decision or the underlying positions of the parties. His application of the terms of the contract add nothing to an understanding of *why* those terms were selected. If indeed the union insisted on the provisions that limit side-riding for safety reasons, the agreement itself would seem more probative of a material issue than the arbitrator's decision. Assuming *arguendo* the decision tends to prove a material fact, its prejudicial impact (i.e., intimations that Defendant has previously been found to engage in the same "wrongful" conduct) far outweighs its probative value; therefore it must be excluded pursuant to Fed.R.Evid. 403.

### Conclusion

For the foregoing reasons, Defendant's first motion *in limine* (docket # 19) is granted in part and denied in part. Dr. Burke may consider unpaid services, and he need not deduct disability benefits already received, when projecting Plaintiff's lost earnings. He may not, however, include in his calculations future Tier I or Tier II *payments* that would have normally been made by the parties. In addition, Defendant's second motion *in limine* (docket # 24) is granted. Plaintiff, his counsel and his witnesses are ordered to avoid any reference to the 1984 arbitration decision.

IT IS SO ORDERED.