FIRST DIVISION

August 25, 1997

No. 1-95-3138

JOHN M. EDWARDS,

Plaintiff-Appellee,

v.

THE ATCHISON, TOPEKA and SANTA FE RAILWAY COMPANY, a company,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Cyril J. Watson,

Judge Presiding.

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiff, John Edwards, brought an action pursuant to the Federal Employers' Liability Act (45 U.S.C. § 51 
et
 
seq
. (1994)) against his employer, the Atchison and Santa Fe railway company (defendant), to recover damages for personal injuries he sustained during the course of his employment.  A jury returned a verdict in favor of plaintiff and assessed damages in the total amount of $450,000, including $150,000 for future loss of earnings. The jury found plaintiff was 5% contributorily negligent and reduced the award to $427,500.  The court amended the judgment to reflect a set-off and an award of costs in favor of plaintiff, and entered a final judgment of $426,918.72.   

Defendant appeals, contending the trial court erred by:  (1) barring defendant from introducing evidence regarding plaintiff's alternate employment options; (2) admitting hearsay evidence; (3) allowing plaintiff's medical expert to give opinions not based on a reasonable degree of medical certainty; (4) refusing to allow defendant to introduce into evidence allegedly false statements plaintiff made while under oath in a deposition; (5) allowing evidence of a proposed merger between defendant and Burlington Northern; and (6) allowing plaintiff's economist to testify that tier II railroad retirement taxes paid by defendant were a fringe benefit of plaintiff's employment.  We reverse and remand for a new hearing on plaintiff's future loss of earnings.

The resolution of this appeal requires only a brief summary of pertinent trial testimony.  As we discuss each issue, we will set forth other facts relevant thereto.

Trial testimony established that plaintiff is a trainman/conductor for defendant.  On June 1, 1988, plaintiff was working in defendant's Corwith railway yard when he was struck by a pickup truck operated by William Slama, an agent of defendant.

Plaintiff presented evidence that he injured his right knee in the collision with the pickup truck and, as a result, he will eventually require a total knee replacement.  Plaintiff also presented evidence that, following the total knee replacement, he will be unable to continue working as a train conductor.  

On appeal, defendant argues the trial court erred by refusing to allow it to present evidence that plaintiff has the option of transferring to engineer service.  As an engineer, plaintiff would earn at least as much money as he makes as a conductor and undergo less physical stress on his knee, thereby extending his work life.  Defendant contends that if the trial court had admitted said evidence, the jury would have awarded plaintiff less than $150,000 for future loss of earnings.

We find no error.  In an offer of proof, plaintiff testified he has 25 years seniority in his present position, as a result of which he can pick and choose the jobs he desires to work.  A transfer to engineer service would be like starting over, resulting in an immediate 10% loss of his salary for six months and the loss of his elected position with the United Transportation Union, which pays about $5,500.  Further, a transfer could result in relocation, the loss of his wife's job, and additional expenses.  Under these circumstances, plaintiff is not required to leave his job as conductor and take the engineering position.  See  Restatement (Second) of Torts §918, Comment j, at 506 (1979) (plaintiff is not obligated to surrender a right of substantial value in order to minimize loss).  Accordingly, the trial court did not err by refusing to allow defendant to present evidence regarding plaintiff's option of transferring from conductor to engineer.

Defendant contends the trial court should have allowed it to present evidence regarding plaintiff's option of transferring to engineer service in the future, after plaintiff has a total knee replacement and can no longer work as a conductor.  However, during the offer of proof, the witnesses who would have testified at trial about plaintiff's future option of transferring to engineer service stated that it was difficult to predict how well plaintiff would function as an engineer after knee surgery or how much money he could expect to earn as engineer.  The trial court correctly excluded such evidence as too speculative.  See 
Poulakis v. Taylor Rental Center, Inc.
, 209 Ill. App. 3d 378, 383 (1991) (opinion testimony based on guess, surmise or conjecture is inadmissible); 
Jarke v. Jackson Products, Inc.
, 282 Ill. App. 3d 292, 299-300 (1996) (an expert's opinion cannot be based on mere conjecture or guess).

Next, defendant argues the trial court erred by admitting a written report memorializing a conversation between plaintiff and a supervisor, J.C. Poe, in which plaintiff reported he was off work because of fluid on his knees.  Defendant contends the report was irrelevant and hearsay.

We disagree.  Poe testified the report was a business record prepared as a routine practice of defendant shortly after his conversation with plaintiff, and, thus, the report was admissible under the business records exception to the hearsay rule.  See 
Birch v. Township of Drummer
, 139 Ill. App. 3d 397, 406-07 (1985).  Moreover, the report was relevant because medical testimony established that fluid on the knees occurs when the anterior cruciate ligament tears, and, as defendant concedes, a "crucial and hotly contested factual issue involved whether or not the June 1, 1988, accident caused a tear in plaintiff's anterior cruciate ligament."  Accordingly, the trial court did not abuse its discretion by admitting Poe's report.

Next, defendant argues the trial court erred by allowing plaintiff's medical expert to testify that the time frame for plaintiff's knee replacement ranged from 3 to 12 years.  Defendant contends the expert's trial testimony conflicted with his pretrial deposition testimony and, therefore, should have been stricken.  Defendant has included only a portion of the expert's deposition in the record on appeal, even though the trial court apparently reviewed the entire deposition prior to admitting said testimony.  Defendant, as the appellant, has the burden of providing a sufficient record for review, and in the absence of such a record, we presume the trial court's ruling was proper.  
Foutch v. O'Bryant
, 99 Ill. 2d 389, 391-92 (1984).

Defendant also contends the expert's trial testimony was not based on a reasonable degree of medical certainty.  We disagree.  The expert was asked to offer his opinions to a reasonable degree of medical certainty, and he opined that defendant would need knee replacement within 3 to 12 years, depending on how fast the knee degenerates.  We find no error.

Next, defendant argues the trial court erred by refusing to allow defendant to introduce into evidence allegedly false statements plaintiff made during a deposition.  Defendant refers to the following testimony given during a deposition on August 2, 1994:

"Q.  Have you ever talked to anyone at Santa Fe about a different job other than being conductor?

A. [Plaintiff:]  No.  Because with our agreement and my seniority, there's no other job that I can really do.

Q. Meaning there's no other job you can do and get paid the same amount, is that what you mean?

A.  Well, yes.  

Q.  And not get paid the same amount.

A. That's for certain, 
but my seniority and our contract won't allow me to go into a different craft
. 

Q.  Without losing seniority, I take it?

A.  More than that.  
They're not hiring.

Q.  Santa Fe is not hiring for any position other than conductor, is that what you are telling me?

A.  As far as I know, there's been like clerks and stuff we've been cutting.  
Every department that I know of, we have been cutting everywhere.  We have been downsizing for years.
   There's probably some position, vice president or something that they're hiring, but they haven't offered me that position." (Emphasis added.)

Defendant argues that the emphasized testimony was false because in fact plaintiff had the option of transferring to engineering service.  Defendant contends the trial court should have admitted said testimony in order to show the jury that plaintiff was willing to misstate the truth regarding his case against defendant.

We disagree.  Plaintiff was deposed a second time on May 5, 1995, prior to trial.  During that deposition, plaintiff was specifically asked about his right to transfer to engineering service.  Plaintiff described the labor agreements related to that issue, and he agreed that he had a right to transfer to engineer. 

The difference between the first and second depositions was the specificity of the questions asked.  After carefully reviewing both depositions, we find no attempt by plaintiff to misstate the truth.  Accordingly, the trial court did not abuse its discretion by excluding defendant's purported impeachment of plaintiff.

Next, defendant contends the trial court erred by denying its motion to bar evidence about a proposed merger between defendant and the Burlington Northern Railroad Company.  Defendant contends the trial court's ruling allowed plaintiff to elicit testimony that the merger would reduce the number of management positions available to him after knee surgery.  Defendant contends it was unfairly prejudiced thereby because the trial court refused to allow it to present evidence that plaintiff could still transfer to an engineering position.  In effect, defendant is rearguing its first issue on appeal, that the trial court erred when it determined defendant could not elicit testimony regarding plaintiff's possible transfer to engineer.  As discussed above, we find no error in that ruling, and we also find no abuse of discretion in the trial court's decision to admit testimony about the merger.

Next, defendant argues the trial court erred by allowing plaintiff's economist to testify that the amount of defendant's payment of tier II taxes pursuant to the Railroad Retirement Act (45 U.S.C. § 231 
et
 
seq.
 (1994)) was a fringe benefit that would be lost when plaintiff could no longer work.  

Rachel v. Consolidated R. Corp.
, 891 F. Supp. 428, 429-30 (N.D. Ohio 1995), is instructive, and we quote its discussion of the issue.

"Pursuant to the Railroad Retirement Act of 1974, 45 U.S.C. §231 
et
 
seq.
, the Railroad Retirement Board administers disability and retirement annuities for eligible railroad workers, paid from a fund maintained by the United States Treasury.  The internal revenue code requires employees and employers alike to contribute tax payments to the annuity fund.  26 U.S.C. §§3201, 3221.  Both employees and employers presently pay an amount equal to 7.65% of the employee's gross wage in 'Tier I' taxes, which taxes sustain the Railroad Retirement Board Disability and Retirement Annuities that supplant social security benefits.  The employee pays an additional 4.9% of his total compensation as a 'Tier II' tax toward the retirement fund's pension component, and the employer adds an amount equal to 16.1% of the employee's compensation in Tier II taxes.  ***

Defendant expects [plaintiff's expert economist] to offer a projected loss of earnings figure that includes as 'fringe benefits' the Tier I and Tier II taxes that Plaintiff and Defendant would have paid in the future but for Plaintiff's disability.  Defendant argues that these sums must be excluded ***.

Had Plaintiff continued in Defendant's employ until his natural retirement, he would have been eligible for a larger retirement annuity.  Defendant concedes Plaintiff's right to seek damages that reflect the loss of that bigger annuity. *** But Defendant insists, and the Court must agree, that the total tax contributions by the parties do not fairly approximate the value of Plaintiff's loss.  Defendant aptly quotes the Missouri court in 
Adams v. Burlington Northern R.R. Co.
, 865 S.W.2d 748, 750 (Mo. Ct. App. 1993): 'Any link between the taxes paid and the benefits is too tenuous to provide a true measure of plaintiff's loss.'  Congress determines the size of the tax contributions and the size of Plaintiff's annuity, and it has no obligation to balance the two. *** As for the Tier II taxes, the Railroad Retirement Act provides the proper method for determining Plaintiff's expected benefits at §3(b), 45 U.S.C. §231b(b).  
Adams
, 
id.
 at 751.  Accordingly, the Court will allow Plaintiff to present evidence of the value of his lost pension benefits calculated in a manner consistent with 45 U.S.C. §231b(b).  It will not, however, permit [plaintiff's expert economist] to offer his opinion that the Tier I and Tier II taxes that would have been paid by the parties save Plaintiff's injury represent lost fringe benefits for which Plaintiff should be compensated in kind."

Thus, 
Rachel
 held that the formula set out in 
Adams
 and 45 U.S.C. §231b(b) is the correct method for computing retirement benefits.  That formula requires a calculation of the amount of benefits plaintiff would have received had he continued working to retirement age and the amount plaintiff will actually receive.  
Adams
, 865 S.W.2d at 751.  The difference between the two amounts, discounted to present value, represents plaintiff's lost retirement benefits.  
Adams
, 865 S.W.2d at 751.

Plaintiff's economist here did not use the aforementioned formula and instead improperly calculated plaintiff's benefits as the amount of tier II taxes paid by defendant.  Accordingly, defendant contends we must reverse and remand for a new trial on all damages.

We disagree.  The jury returned an itemized verdict, allocating $16,000 for past disability, $100,000 for future disability, $26,500 for past pain and suffering, $100,000 for future pain and suffering, $7,500 for past loss of earnings, $150,000 for future loss of earnings, and $50,000 for future medical expenses.  The retirement benefits at issue here are only a part of plaintiff's future loss of earnings; they are not a part of the other components of the damages award.  Accordingly, we reverse only the portion of the jury's verdict awarding plaintiff $150,000 in future loss of earnings.  We remand for a new hearing on plaintiff's future loss of earnings, in which plaintiff's economist will use the above-mentioned formula to compute plaintiff's retirement benefits.

Treadaway v. Societe Anonyme Louis-Dreyfus
, 894 F.2d 161 (5th Cir. 1990), 
Monaghan v. Uiterwyk Lines, Ltd.
, 607 F. Supp. 1020 (E.D. Pa. 1985), and 
Jones & Laughlin Steel Corp. v. Pfeifer
, 462 U.S. 523, 76 L. Ed. 2d 768, 103 S. Ct. 2541 (1983), cited by plaintiff, are inapposite, as none of those cases involved the computation of tier II benefits. 

For the foregoing reasons, we reverse and remand for a new hearing on plaintiff's future loss of earnings.

BUCKLEY, J., and GALLAGHER, J., concur.